ROB BONTA
Attorney General of California
LYNDSAY CRENSHAW
Supervising Deputy Attorney General
LAURA MACFARLANE
Deputy Attorney General
State Bar No. 301284
　600 West Broadway, Suite 1800
　San Diego, CA 92101
　Telephone:  (619) 738-9147
　Fax:  (916) 732-7920
　E-mail:  Laura.Macfarlane@doj.ca.gov
*Attorneys for Defendants*
*D. Emanuel and M. Nieves*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **MARCUS ALLEN HOLMES,**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**D. EMANUEL, et al.,**<br><br>　　　　　　　　　　Defendants. | 2:24-cv-10845-SVW-SK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:　　　The Honorable Steve Kim<br>Trial Date:　Not Set<br>Action Filed: 12/12/2024 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1
Statement Regarding Material Facts and Standard of Review ................................ 2
Legal Argument ........................................................................................................ 3
    I.    Defendants' Mental Health Care Did not Violate the Constitution. ............................................................................................. 3
        A.    The Standard for Deliberate Indifference ................................... 3
        B.    Plaintiff Did Not Have a Serious Medical Need. ....................... 5
        C.    Defendants Were Not Deliberately Indifferent. .......................... 7
    II.    Defendant Emanuel Did Not Retaliate Against Plaintiff. .................... 10
        A.    Standard for Retaliation Claims ................................................ 10
        B.    Dr. Emanuel Did Not Retaliate Against Plaintiff. ..................... 11
            1.    Dr. Emanuel Did Not Discharge Plaintiff from EOP because of Protected Conduct. ......................................... 11
            2.    Plaintiff's Discharge from EOP Advanced Legitimate Correctional Goals. ...................................... 12
    III.    Summary Judgment in Plaintiff's Favor is Barred by Affirmative Defenses. ................................................................................. 13
Conclusion .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Berg v. Kincheloe*,
 794 F.2d 457 (9th Cir. 1986) ................................................................................ 5

*Brodheim v. Cry*,
 584 F.3d 1262 (9th Cir. 2009) ............................................................................ 11

*Bruce v. Ylst*,
 351 F.3d 1283 (9th Cir. 2003) ............................................................................ 12

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*,
 213 F.3d 474 (9th Cir. 2000) ................................................................................ 2

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .............................................................................................. 2

*Colburn v. Upper Darby Twp.*,
 946 F.2d 1017 (3d Cir. 1991) ............................................................................... 6

*Conn v. City of Reno*,
 591 F.3d 1081 (9th Cir. 2010) ......................................................................... 5, 6

*Doty v. Cty. of Lassen*,
 37 F.3d 540 (9th Cir. 1994) .................................................................................. 4

*Estelle v. Gamble*,
 429 U.S. 97 (1976) ............................................................................................... 4

*Farmer v. Brennan*,
 511 U.S. 825 (1994) ......................................................................................... 4, 5

*Fontenot v. Upjohn Co.*,
 780 F.2d 1190 (5th Cir. 1986) ............................................................................. 2

*Franklin v. State of Oregon*,
 662 F.2d 1337 (9th Cir. 1981) ............................................................................. 9

*Gobert v. Caldwell*,
 463 F.3d 339 (5th Cir. 2006) ............................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

*Hamby v. Hammond*,
  821 F.3d 1085 (9th Cir. 2016) ................................................................... 5, 9

*Hammler v. Alvarez*,
  No. 18-cv-326-AJB(WVG), 2019 WL 422575 (S.D. Cal. Feb. 4, 2019) ............................................................................................................ 11

*Helling v. McKinney*,
  509 U.S. 25 (1993) ............................................................................................ 4

*Hendon v. White,*
  320 F. App'x 717, 718 (9th Cir. 2009) ............................................................ 9

*Jett v. Penner*,
  439 F.3d 1091 (9th Cir. 2006) .......................................................................... 4

*Nevada Dept. of Corr. v. Greene*,
  648 F.3d 1014 (9th Cir. 2011) ........................................................................ 12

*Peralta v. Dillard*,
  744 F.3d 1076 (9th Cir. 2014) ..................................................................... 4, 5

*Popham v. City of Talladega*,
  908 F. 2d 1561 (11th Cir. 1990) ...................................................................... 6

*Pratt v. Rowland*,
  65 F.3d 802, 807 (9th Cir. 1995). .................................................................. 12

*Quiroz v. Horel*,
  85 F. Supp. 3d 1115 (N.D. Cal. 2015) ........................................................... 11

*Rhodes v. Robinson*,
  408 F.3d 559 (9th Cir. 2005) .......................................................................... 10

*Snow v. McDaniel*,
  681 F.3d 978 (9th Cir. 2012) ............................................................................ 4

*Toguchi v. Chung*,
  391 F.3d 1051 (9th Cir. 2004) ..................................................................... 4, 5

<div style="text-align:center">

**TABLE OF AUTHORITIES**
**(continued)**

</div>

**Page**

*Toracco v. Maloney*,
  923 F.2d 231 (1st Cir. 1991) ................................................................................ 6

*Vivanco v. Cal. Dep't of Corr. & Rehab.*,
  1:17-cv-00434-BAM, 2019 U.S. Dist. LEXIS 110851 (E.D. Cal.
  July 1, 2019) ........................................................................................................ 6

*Watison v. Carter*,
  668 F.3d 1108 (9th Cir. 2012) ............................................................................ 10

*Wood v. Housewright*,
  900 F.2d 1332 (9th Cir. 1990) .............................................................................. 5

*Wood v. Yordy*,
  753 F.3d 899 (9th Cir. 2014) .............................................................................. 11

**Statutes**

42 U.S.C
  § 1983 ................................................................................................................... 4

**Other Authorities**

First Amendment ................................................................................................ 3, 10

Eighth Amendment ..................................................................................... 3, 4, 5, 7

Federal Rule of Civil Procedure
  Rule 56(a) ............................................................................................................. 2

Defendants D. Emanuel and M. Nieves hereby submit the following Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 53.

## INTRODUCTION

Plaintiff Marcus Allen Holmes alleges that Defendant D. Emanuel and M. Nieves failed to provide adequate mental health treatment and that Defendant Emanuel retaliated against him. Plaintiff now seeks summary judgment on his claims. (ECF No. 53.)

Plaintiff failed to meet his burden to support a finding of summary judgment. Plaintiff cannot meet the elements of his causes of action and has not provided evidence to support his claims.

The undisputed facts show that while Plaintiff was Defendants' patient, he received adequate and continuous mental health care and clinical contact. The Defendants met with Plaintiff, evaluated him on multiple occasions, and took part in multidisciplinary treatment team meetings with Plaintiff and other medical and mental health staff to discuss Plaintiff's treatment planning and level of care. The Defendants' professional opinion, based on their training, experience, and professional judgment, was that Plaintiff was high functioning, not decompensating, and had no indications of acute or genuine suicidality. Dr. Emanuel, along with other members of Plaintiff's treatment team, thoroughly assessed Plaintiff and decided to discharge him to a lower level of care.

The undisputed facts and medical evidence show that: (1) Defendants provided adequate and appropriate mental health care to Plaintiff and were not deliberately indifferent to Plaintiff's serious medical needs; and (2) Dr. Emanuel's decision to discharge Plaintiff to a lower level of care was not retaliatory, and was based on his sound judgment as a psychologist and advanced legitimate correctional goals. In addition to not being able to show a dispute of fact on his deliberate indifference and retaliation claims, Plaintiff failed to exhaust his administrative remedies for those claims. Finally, Defendants are entitled to qualified immunity,

which Plaintiff has done nothing to dispute.

For the foregoing reasons, the Court should deny Plaintiff's Motion for Summary Judgment, and grant Defendants' Motion for Summary Judgment.

**STATEMENT REGARDING MATERIAL FACTS AND STANDARD OF REVIEW**

Plaintiff fails to put forth any undisputed facts to support summary judgment in his favor. Instead, Plaintiff's undisputed facts simply repeat the allegations in his Complaint and administrative grievances without the type of substantive and material evidence necessary to prevail on summary judgment. Defendants' responses to these facts, all of which are disputed, are contained in their Statement of Genuine Disputes, filed concurrently herewith.

When a defendant brings a motion for summary judgment, Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, "[w]hen the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  A plaintiff moving for summary judgment, must therefore "establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff cannot establish the elements of either his deliberate indifference or retaliation claims.

Defendants agree that there is no genuine issue for trial, but that is because the undisputed facts show that it is Defendants who are entitled to summary judgment. On February 3, 2026, Defendants filed a comprehensive Motion for Summary

2

Judgment outlining that there is no genuine issue for trial because the undisputed facts show that Defendants did not violate Plaintiff's Eighth Amendment rights and show that Defendant Emanuel did not violate Plaintiff's First Amendment rights. (Defendants' Motion for Summary Judgment (ECF No. 52).) In support of Defendants' Motion, they submitted a Statement of Uncontroverted Facts with almost 200 uncontroverted facts, citing to Plaintiff's deposition, Plaintiff's medical and mental health records, Defendants' declarations, and the declaration of a mental health expert. (ECF No. 52.)[1] Further, Plaintiff failed to exhaust administrative remedies prior to filing suit and the Defendants are entitled to qualified immunity. (Memorandum of Points and Authorities in support of Defendants' Motion for Summary Judgment (ECF No. 52-3).) Thus, even if there were a genuine issue for trial, summary judgment in Plaintiff's favor is barred by affirmative defenses

## LEGAL ARGUMENT

### I. DEFENDANTS' MENTAL HEALTH CARE DID NOT VIOLATE THE CONSTITUTION.

Plaintiff's Motion should be denied. On the merits, Plaintiff has presented no evidence that there is no genuine issue and that he is entitled to summary judgment. Plaintiff's undisputed facts are conclusory re-statements of his own allegations, supported by evidence re-stating his allegations. Defendants dispute the "facts" set forth in Plaintiff's Motion and have comprehensive evidence that there is no genuine issue such that Defendants are entitled to summary judgment. Further, Plaintiff did not exhaust his administrative remedies prior to filing suit, and his claims are barred.

### A. The Standard for Deliberate Indifference

The government has an "obligation to provide medical care for those whom it

---

[1] For the convenience of the Court and Parties, Defendants do not restate their own uncontroverted facts. In opposing Plaintiff's Motion, Defendants cite to the Statement of Uncontroverted Facts (ECF No. 52-2) submitted in support of their Motion for Summary Judgment, and the underlying evidence cited therein.

1  is punishing by incarceration," and failure to meet that obligation can constitute an
2  Eighth Amendment violation cognizable under 42 U.S.C § 1983. *Estelle v. Gamble*,
3  429 U.S. 97, 103–05 (1976). The constitutional requirements for mental health care
4  are the same as those for physical health care needs. *Doty v. Cty. of Lassen*, 37 F.3d
5  540, 546 (9th Cir. 1994). In order prevail on an Eighth Amendment claim for
6  inadequate medical care, a prisoner must show that a specific defendant was
7  "deliberately indifferent" to their "serious medical needs." *See Helling v.*
8  *McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 104, 106
9  (1976). This includes "both an objective standard—that the deprivation was serious
10 enough to constitute cruel and unusual punishment— and a subjective standard—
11 deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),
12 *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir.
13 2014) (en banc).

14    To meet the objective element, the plaintiff must show a serious medical
15 need by demonstrating that failure to treat a prisoner's condition could result in
16 further significant injury or the unnecessary and wanton infliction of pain. *Jett v.*
17 *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To meet the subjective element, the
18 plaintiff must show that the defendant's response to the need was deliberately
19 indifferent. *Id.* This second, subjective element is satisfied when a plaintiff shows,
20 as to each defendant: 1) a purposeful act or failure to respond to a prisoner's pain or
21 possible medical need; and 2) harm caused by indifference. *Id.*

22    Deliberate indifference is an "extremely high" standard. *Gobert v. Caldwell*,
23 463 F.3d 339, 346 (5th Cir. 2006); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060
24 (9th Cir. 2004). The plaintiff must show that the prison official acted with a
25 "sufficiently culpable state of mind" because "only the unnecessary and wanton
26 infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S.
27 825, 834 (1994). Deliberate indifference requires that the defendant had a state of
28 ///

4

mind of subjective recklessness, beyond an ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

The Eighth Amendment does not require optimal medical care, it prohibits only deliberate indifference. "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* (internal quotation marks and citation omitted). *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). Even gross negligence is insufficient to establish a constitutional violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). A reasonable response to a known risk is not an Eighth Amendment violation even if harm results. *See Farmer*, 511 U.S. at 844-45; *see generally Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986).

A difference of opinion between medical professionals, or difference of opinion between the medical professional and inmate concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *See Toguchi*, 391 F.3d at 1059–60.

**B.  Plaintiff Did Not Have a Serious Medical Need.**

To prevail on his Eighth Amendment claims, Plaintiff must present evidence that he had a serious medical need that could lead to further significant injury. Plaintiff cannot do so. The undisputed facts show that throughout the care provided by Defendants, from April 2024 through July 2, 2024, Plaintiff did not have a serious medical need.

Plaintiff alleges that he was a suicide risk due to post-traumatic stress he suffered during an incident at California State Prison — Sacramento ("SAC"). (Defendants' Statement of Uncontroverted Facts ("SUF") in Support of Defendants' Motion for Summary Judgment (ECF No. 52-2), No. 145.) However, only a heightened suicide risk is sufficient to establish a serious medical need. *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010). A generalized suicide risk,

5

like Plaintiff is claiming here, is insufficient. *See Conn*, 591 F.3d at 1095, *see also Vivanco v. Cal. Dep't of Corr. & Rehab.*, 1:17-cv-00434-BAM, 2019 U.S. Dist. LEXIS 110851, at *15-16 (E.D. Cal. July 1, 2019) (recommending summary judgment where the plaintiff submitted evidence of "a generalized risk of suicide"); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991) ("there must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur" (internal quotation marks omitted)); *accord Toracco v. Maloney*, 923 F.2d 231, 236 (1st Cir. 1991); *Popham v. City of Talladega*, 908 F. 2d 1561, 1563 (11th Cir. 1990) (per curiam).

       Contrary to Plaintiff's statements in his Motion, he did not have a heightened risk of suicide during the relevant timeframe. Plaintiff missed multiple confidential sessions with mental health staff. (SUF Nos. 31, 63, 83, 146.) When mental health staff checked on him cell front, there was no indication that he was decompensating. (SUF Nos. 31, 41, 63, 83, 87, 147.) Clinicians, including the Defendants, assessed Plaintiff on multiple occasions and observed that he was free from mental health symptoms and functioning well. (SUF Nos. 31, 41-94.) Numerous nondefendant clinicians evaluated Plaintiff for suicide risk after he made suicidal statements, and all observed that he was using the statements, and in some cases superficial self-harm, for secondary gain to manipulate his housing by seeking a higher level of care. (SUF No. 148.) None of these clinicians referred Plaintiff to a higher level of care, and none of them believed he was at an acute risk of suicide. (SUF No. 149.) Further, Plaintiff had a consistently vocalized future plans and support systems through his faith, family, and contacts within his housing, where he helped other inmates do their hair. (SUF No. 150.) Plaintiff's behavior was at his baseline and he exhibited no functional impairments due to his mental health. (SUF No. 31, 41-94.) Plaintiff's continuous suicidal statements do not establish that he had a heightened risk. At most, Plaintiff had a generalized suicide risk.

1   While Plaintiff was under the Defendants' care, he did not have a heightened
2   risk of suicide, and he cannot establish that he had an objectively serious medical
3   need. Plaintiff cannot prevail on his Eighth Amendment claims against Defendants.
4   Thus, the Court should deny Plaintiff's Motion.

### C. Defendants Were Not Deliberately Indifferent.

Even if Plaintiff could show that he had a serious medical need, the Defendants were not deliberately indifferent to his need. The undisputed facts and medical evidence show that Nieves and Dr. Emanuel provided mental health care consistently and appropriately.

Plaintiff's Motion cites to evidence related to the Coleman class action, in which the attorneys for the class present issues with mental health care for EOP inmates at California State Prison, Los Angeles ("LAC") in D-Yard. (Plaintiff's Motion for Summary Judgment, Exhibit F.) But general issues with mental health care for EOP inmates at LAC does not prove that these individual Defendants were deliberately indifferent to Plaintiff's serious medical needs in the care they provided to him, such that he is entitled to damages. Plaintiff must show that these individual Defendants were deliberately indifferent to his serious medical needs, and he cannot do so. On the contrary, the Defendants provided consistent care to Plaintiff during the relevant timeframe.

Shortly after Plaintiff arrived at LAC, Nieves met him for an initial assessment in a confidential setting. (SUF No. 19.) Then, Plaintiff met in a confidential setting with his psychiatrist. (SUF No. 16.) Plaintiff had an Interdisciplinary Treatment Team ("IDTT") meeting, in a confidential setting, shortly after arrival to discuss treatment planning. Nieves took part in the IDTT with multiple other professionals. (SUF Nos. 21-26.) Thereafter, Plaintiff missed confidential caseload groups and one-on-ones, some due to his own refusal, others due to staffing shortages or modified programming at the institution, and some due to his constant transfers between his assigned housing and alternative housing.

7

(SUF Nos. 31, 41-94.) However, every time Plaintiff missed confidential contact, he was seen by Defendants cell front for a wellness check on the status of his mental health and to ensure he was not actively decompensating. (SUF Nos. 31, 41-94.) During his transfers between his assigned housing and alternative housing, which were due to his suicidal statements, Plaintiff was evaluated for suicide risk, and thereafter evaluated daily for a period of five days. (SUF Nos. 41-94.)

Plaintiff alleges that Defendants provided inadequate care when they refused to see him one-on-one and violated his confidentiality rights. (SUF No. 151.) Further, that he was inappropriately cleared from suicide watch after cutting himself, and thereafter hung himself and was not put on suicide watch. (SUF No. 152.) The undisputed evidence shows that Plaintiff received consistent clinical interactions with Defendants and many other mental health clinicians between April and August 2024. Neither of the Defendants were involved in Plaintiff's suicide risk evaluations or the decisions not to refer him to a higher level of care after he self-harmed or made suicidal statements. (SUF No. 153.) Plaintiff was discharged from EOP to CCCMS on July 2, 2024, because it was clinically indicated given a combination of circumstances, including Plaintiff's own prior discussion that he might like to discharge to CCCMS for vocational programming, and that he was free of mental health symptoms, and functioning well. (SUF No. 154.)

Neither Defendant was aware of any serious risk to Plaintiff's health, nor did they disregard that risk. During the approximately five weeks that Plaintiff was on Nieves's caseload, she saw him five different times. (SUF Nos. 19-50.) She evaluated Plaintiff on each occasion, observing his physical appearance and behavior. (SUF Nos. 19-50.) She also sought collateral information from custody in his housing unit. (SUF Nos. 24, 48.) When Plaintiff expressed dissatisfaction with his care, she informed him he could utilize health care request forms and encouraged him to utilize the grievance process to advocate for himself. (SUF No. 155.) Nieves, who was working in concert with and under the supervision of other

(SUF Nos. 31, 41-94.) However, every time Plaintiff missed confidential contact, he was seen by Defendants cell front for a wellness check on the status of his mental health and to ensure he was not actively decompensating. (SUF Nos. 31, 41-94.) During his transfers between his assigned housing and alternative housing, which were due to his suicidal statements, Plaintiff was evaluated for suicide risk, and thereafter evaluated daily for a period of five days. (SUF Nos. 41-94.)

Plaintiff alleges that Defendants provided inadequate care when they refused to see him one-on-one and violated his confidentiality rights. (SUF No. 151.) Further, that he was inappropriately cleared from suicide watch after cutting himself, and thereafter hung himself and was not put on suicide watch. (SUF No. 152.) The undisputed evidence shows that Plaintiff received consistent clinical interactions with Defendants and many other mental health clinicians between April and August 2024. Neither of the Defendants were involved in Plaintiff's suicide risk evaluations or the decisions not to refer him to a higher level of care after he self-harmed or made suicidal statements. (SUF No. 153.) Plaintiff was discharged from EOP to CCCMS on July 2, 2024, because it was clinically indicated given a combination of circumstances, including Plaintiff's own prior discussion that he might like to discharge to CCCMS for vocational programming, and that he was free of mental health symptoms, and functioning well. (SUF No. 154.)

Neither Defendant was aware of any serious risk to Plaintiff's health, nor did they disregard that risk. During the approximately five weeks that Plaintiff was on Nieves's caseload, she saw him five different times. (SUF Nos. 19-50.) She evaluated Plaintiff on each occasion, observing his physical appearance and behavior. (SUF Nos. 19-50.) She also sought collateral information from custody in his housing unit. (SUF Nos. 24, 48.) When Plaintiff expressed dissatisfaction with his care, she informed him he could utilize health care request forms and encouraged him to utilize the grievance process to advocate for himself. (SUF No. 155.) Nieves, who was working in concert with and under the supervision of other

staff, determined Plaintiff was high functioning, not decompensating at any time he was on her caseload, and free of genuine suicidality. (SUF No. 156.)

During the approximately five weeks Plaintiff was on Dr. Emanuel's caseload, Dr. Emanuel saw Plaintiff no less than seven times, including interactions as part of Plaintiff's five-day follow ups. (SUF Nos. 62-94.) Much of the time Plaintiff was on Dr. Emanuel's caseload, Plaintiff moved back and forth between alternative housing and his regular housing in D4. (SUF No. 157.) Dr. Emanuel evaluated Plaintiff on each occasion, observing his physical appearance and behavior, and sought collateral information about Plaintiff's behavior in the housing units. (SUF Nos. 62-94, 158.) Dr. Emanuel, based on his extensive professional experience in the setting, and his education, believed in his professional opinion that Plaintiff was high functioning, not decompensating, and that he was free of mental health symptoms that impacted his functioning. (SUF No. 159.) Dr. Emanuel made the decision with other clinical staff to discharge Plaintiff to a CCCMS level of care. (SUF No. 160.) In addition to the times Plaintiff saw Nieves and Dr. Emanuel, Plaintiff also saw his psychiatrist on at least two occasions, was evaluated for suicide risk multiple times by various nondefendant clinicians, and had two IDTTs where Defendants were present with Plaintiff's entire treatment team. (SUF Nos. 16-102.)

Plaintiff believes that he should not have been discharged from EOP, and that the cell front assessments were inadequate to address his mental health concerns because they were not confidential. First, Plaintiff's belief that he should not have been discharged from EOP is a difference of opinion between Plaintiff and Dr. Emanuel and the other members of the team at Plaintiff's IDTT. A difference of opinion between Plaintiff and Dr. Emanuel does not amount to deliberate indifference. *See Hendon*, 320 F. App'x at 718; *see also Hamby* 821 F.3d at 1092; *see Franklin*, 662 F.2d at 1344. Second, an alleged violation of Plaintiff's confidentiality does not relate to whether Defendants were deliberately indifferent

9

to his serious medical needs. Defendants consistently performed mental health checks with Plaintiff and evaluated him based on their usual process and professional experience. Their subjective belief, based on their training and experience, was that there was no serious risk to Plaintiff's health, and that he was high functioning and never actively decompensating. The undisputed facts and medical evidence show that Plaintiff cannot demonstrate that Defendants were deliberately indifferent to his serious medical needs. Defendants are entitled to summary judgment and the Court should deny Plaintiff's Motion.

## II. DEFENDANT EMANUEL DID NOT RETALIATE AGAINST PLAINTIFF.

### A. Standard for Retaliation Claims

Prison inmates have a constitutional right to freedom from retaliation for engaging in activity protected by the First Amendment, including pursuing "'civil rights litigation in the courts.'" *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005) *quoting Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). A viable claim of First Amendment retaliation has five elements. First, plaintiff must show that he engaged in conduct protected by the First Amendment. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Second, a "plaintiff must claim that the defendant took adverse action against the plaintiff." *Id*. (*citing Rhodes*, 408 F.3d at 567.) Third, plaintiff must show a causal connection between the protected conduct and the adverse action. *Id*. Fourth, the plaintiff must prove either a chilling effect on the exercise of First Amendment rights or some other harm. *Id*. Finally, plaintiff must show that the retaliatory action "'did not advance legitimate goals of the correctional institution.'" *Id*. (*quoting Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985); *Rhodes*, 408 F.3d at 567-68.

///
///

10

### B. Dr. Emanuel Did Not Retaliate Against Plaintiff.

#### 1. Dr. Emanuel Did Not Discharge Plaintiff from EOP because of Protected Conduct.

Plaintiff cannot prevail on his claim that Dr. Emanuel refused mental health care or discharged Plaintiff from EOP because of Plaintiff's protected conduct. "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) *quoting Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). "Retaliatory motive may be shown by the timing of the allegedly-retaliatory act *and other circumstantial evidence*, as well as direct evidence." *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) (emphasis added) *citing Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). But evidence of timing alone is insufficient to establish retaliatory motive; "rather, [p]laintiff must allege sufficient facts to plausibly suggest a nexus between the alleged protected activity and the adverse action taken by a defendant." *Hammler v. Alvarez*, No. 18-cv-326-AJB(WVG), 2019 WL 422575, at *9 (S.D. Cal. Feb. 4, 2019) (original quotation marks and alterations omitted).

Here, Dr. Emanuel did not take any action because of Plaintiff's protected conduct, and Plaintiff has no direct evidence that Dr. Emanuel did so. Plaintiff asks the Court to infer retaliatory intent because sometime prior to Plaintiff's discharge from EOP, Plaintiff submitted health care grievances complaining of the mental health treatment he received at LAC. Plaintiff's reliance on timing alone is insufficient to survive summary judgment. *See Quiroz*, 85 F.Supp.3d at 1124. First, Dr. Emanuel was not the sole individual making decisions about Plaintiff's mental health care or his discharge from EOP. (SUF No. 160.) Those decisions were made in concert with a team of professionals who determined that Plaintiff had received

11

the maximum treatment benefit at EOP, and that he should discharge to the least restrictive setting. (SUF Nos. 95-105.) Plaintiff's discharge to CCCMS had been discussed in prior IDTTs that Dr. Emanuel was not a part of, and in fact, Plaintiff had indicated in April 2024 that he wished to discharge to CCCMS to receive additional vocational services. (SUF Nos. 17, 20-26.) Further, Dr. Emanuel did not know Plaintiff had submitted the grievances in question. (SUF No. 161.) None of the grievances submitted prior to July 2, 2024 mention Dr. Emanuel or his care. (SUF No. 162.) Plaintiff ultimately relies on "[m]ere speculation that [Dr. Emanuel] acted out of retaliation" which is not sufficient to survive summary judgment.

### 2. Plaintiff's Discharge from EOP Advanced Legitimate Correctional Goals.

Dr. Emanuel, as part of the IDTT, had a legitimate correctional goal in discharging Plaintiff from EOP. The treatment standard is to provide an appropriate level of treatment in the clinically least restrictive setting. It was necessary and appropriate for the IDTT to discharge Plaintiff to a less restrictive setting when he was determined to be able to do so. This decision had been discussed at earlier IDTTs and nothing in Plaintiff's record indicated that he needed to remain at the EOP level of care or be referred to a higher level of care.

Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 *quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)). The Ninth Circuit has "made clear that the prisoner plaintiff 'bears the burden of pleading and proving the *absence* of legitimate correctional goals for the conduct of which he complains.'" *Bruce*, 351 F.3d at 1289 (emphasis added) (quoting *Pratt*, 65 F.3d at 806). Ensuring the safety and security, including life and health, of inmates is a legitimate correctional goal. *See Nevada Dept. of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (finding legitimate correctional goal in policy imposed in response to death of an inmate).

Dr. Emanuel's decision to discharge Plaintiff from EOP advanced correctional goals. Decisions about Plaintiff's care and discharge were made by the IDTT, which included multiple professionals. (SUF Nos. 160, 95-105.) Plaintiff was present for this decision making. (SUF No. 163.) Plaintiff had indicated on prior occasions that he wished to discharge to CCCMS to receive more vocational services. (SUF No. 164.) The CDCR treatment standard is to provide a level of treatment to promote individual functioning within the clinically least restrictive environment. (SUF No. 165.) Assessing Plaintiff's mental health in the context of his baseline, whether he was stabilized, and whether he still had acute needs, and whether he had received the maximum treatment benefit was in the best interest of Plaintiff's life, health, and safety. (SUF No. 166.) Further, the resource of providing Plaintiff with EOP care, when he refused to program or participate in caseload groups, takes resources away from other patients who are participating and programming. (SUF No. 167.) Plaintiff received proper and appropriate mental health treatment, and his discharge was medically indicated. (SUF No. 168.) In the opinion of mental health professionals, and according to CDCR policy, discharging Plaintiff from EOP once he was ready for a lower, less restrictive, level of care was in his best interest. (SUF No. 169.) Dr. Emanuel's decisions, which he made in concert with other professionals, were not because of Plaintiff's protected conduct, and they advanced legitimate correctional goals. Therefore, Dr. Emanuel is entitled to summary judgment and the Court should deny Plaintiff's Motion.

## III. SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR IS BARRED BY AFFIRMATIVE DEFENSES.

As argued in Defendants' Motion for Summary Judgment, summary judgment cannot be granted in Plaintiff's favor because Plaintiff failed to exhaust administrative remedies and Defendants are entitled to qualified immunity. (Defendants' Motion for Summary Judgment (ECF No. 52).)

///

# CONCLUSION

Based on the foregoing, Plaintiff is not entitled to summary judgment and his motion should be denied.

Dated: March 5, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
LYNDSAY CRENSHAW
Supervising Deputy Attorney General

*/s/ Laura Macfarlane*

LAURA MACFARLANE
Deputy Attorney General
*Attorneys for Defendants*
*D. Emanuel and M. Nieves*

LA2025801071
85610534

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants M. Nieves and D. Emanuel, certifies that this brief contains 4,168 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 5, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California

LAURA MACFARLANE
Deputy Attorney General
*Attorneys for Defendants D. Emanuel and M. Nieves*